**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **JAMES RIVER INSURANCE COMPANY,** | |
| Plaintiff, | |
| v. | |
| **RINELLA & RINELLA, LTD.,** an Illinois Corporation, **BERNARD B. RINELLA, MARICAROL LACY, KEMPER CASUALTY INSURANCE COMPANY,** an Illinois Corporation, and **LISA M. TERRANOVA,** a nominal party, | Case No. 07 C 4233 |
| Defendants. | Hon. Harry D. Leinenweber |
| **KEMPER CASUALTY INSURANCE COMPANY,** | |
| Counter-Plaintiff, | |
| v. | |
| **JAMES RIVER INSURANCE COMPANY,** | |
| Counter-Defendant. | |

### MEMORANDUM OPINION AND ORDER

### I.  BACKGROUND

This case involves the construction of a malpractice insurance policy and the duty to defend. Rinella & Rinella, Bernard R. Rinella, and Maricarol Lacy (hereinafter, the "Rinellas") are matrimonial lawyers. James River Insurance Company (hereinafter, "James River") and Kemper Casualty Insurance Company (hereinafter,

"Kemper") are liability insurance carriers that sold the Rinellas malpractice insurance policies. Lisa Terranova (hereinafter, "Terranova") is a former client of the Rinellas who is suing them in the Circuit Court of Cook County, Illinois for malpractice. Kemper is defending the Rinellas in that case under a reservation of rights. James River has declined to defend the Rinellas based on its view that under the terms of its policy it has no duty to do so. It filed this suit seeking a declaration supporting its position. Kemper and the Rinellas have filed counterclaims seeking declarations that James River owes a defense and has an obligation to indemnify. All three parties have filed Motions for Summary Judgment.

The parties substantially agree on all of the facts but disagree as to the appropriate legal conclusions. The James River policy is "written on a 'claims-made and reported basis'" and provides malpractice coverage for "claims that occur subsequent to the retroactive dated stated in the declarations" and which are reported while the policy is in force. The policy was issued for the period November 8, 2004 to November 8, 2005 with a retroactive date of November 2, 2002. On April 20, 2005, Lisa Terranova filed suit against the Rinellas and the suit is presently pending on a Third Amended Complaint filed on June 9, 2008.

The Terranova suit arose out of a divorce proceeding filed on May 21, 1999, in which she was represented by the Rinellas. Her

husband was represented by an attorney named Richard Doermer. On December 23, 1999, a Marital Settlement Agreement (the "MSA") was reached by the parties and the marriage was dissolved on January 5, 2000. The MSA contained a provision awarding Terranova a portion of her husband's Comdisco Employee Stock Options Plan Account ("CESOPA"). The MSA provided that the transfer of her portion of the CESOPA would be by a Qualified Domestic Relations Order ("QDRO") through the Plan Administrator of the CESOPA pursuant to the provision of ERISA. However on February 21, 2000, Comdisco sent a letter to the parties stating that a QDRO was not the proper mechanism for transfer of the stock options and advised that Terranova should set up a subaccount in her name. Apparently the Rinellas decided not to follow this advice and instead filed a petition for a rule to show cause against Terranova's husband for failing to effectuate the transfer. A hearing was held on March 26, 2001. An order denying the petition was entered on September 20, 2001. However, on July 16, 2001, Comdisco filed for bankruptcy rendering the options worthless. The denial of the petition was appealed to the Illinois Appellate Court which subsequently affirmed the trial court's denial.

The bases for Terranova's suit against the Rinellas is that the attorneys committed professional negligence in failing to use the proper mechanics in obtaining the transfer of the Comdisco stock options prior to the bankruptcy, and in pursuing the rule to

show cause instead of seeking the transfer or seeking to have the MSA amended to provide for replacement assets; in not advising her of their acts of malpractice in violation of their fiduciary duty; and the Rinellas conspired with her husband's attorneys to lull her into a false sense of security so as to prevent her from filing a malpractice suit until her claim was time barred.

## II. DISCUSSION

The relevant provisions of the James River insurance contract are as follows:

1. THIS POLICY IS WRITTEN ON A "CLAIMS-MADE AND REPORTED BASIS" AND PROVIDES PROFESSIONAL LIABILITY COVERAGE FOR THOSE CLAIMS THAT OCCUR SUBSEQUENT TO THE RETROACTIVE DATE STATED IN THE DECLARATIONS AND WHICH ARE FIRST MADE AGAINST YOU AND REPORTED TO US WHILE THIS POLICY IS IN FORCE. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST YOU AND REPORTED TO US AFTER THE END OF THE POLICY TERM UNLESS, AND TO THE EXTENT, AN EXTENDED REPORTING PERIOD APPLIES.

2. SECTION I – COVERAGES

    1. **Insuring Agreement**

        a. We will pay on behalf of the "Insured" those sums in excess of the deductible the "Insured" becomes legally obligated to pay as "Damages" and "Claims Expenses" because of a "Claim" first made against the "Insured" and reported to us in writing during the "Policy Period" by reason of a "Wrongful Act" in the performance of or failure to perform "Professional Services" by the "Insured" or by any other person or entity for whom the "Insured" is legally liable. The

"Wrongful Acts" must have been committed on or subsequent to the "Retroactive Date" specified in the Declarations and before the end of the "Policy Period".

**b. Defense and Settlement**

We shall have the right and duty to defend any covered "Claim" brought against the "Insured" even if the "Claim" is groundless, false or fraudulent. However, we will have no duty to defend the "Insured" against any "Claim" seeking "Damages" to which this insurance does not apply. You shall not admit or assume liability nor settle or negotiate to settle any "Claim", nor incur any "Claims Expenses" without our prior written consent. We shall have the right to appoint counsel and to make any investigation and defend any "Claim" as we deem necessary.

3. SECTION II - DEFINITIONS

   * * *

   B. "Claim" means a written demand for monetary damages arising out of or resulting from the performing or failure to perform "Professional Services".

   C. "Claims Expenses" means:

      (1) attorney's fees, expert witness fees and other reasonable fees and costs paid by us or by you with our prior written consent, in the investigation and defense of covered "Claims";

      (2) reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a "Claim", including

the cost of appeal bonds, however, we shall not be obligated to apply for or furnish appeal bonds on your behalf.

"Claims Expenses" does not include your employees wages or salaries or the costs of your directors, officers or employees.

All "Claims Expenses" are a part of the Limit of Liability and Deductible and shall not be considered sums payable in addition thereto.

\* \* \*

G. "Named Insured" means the entity or person named in the Declarations.

\* \* \*

I. "Policy Period" means the period of time shown in the Declarations.

J. "Professional Services" means those services performed by the "Insured" for others:

(1) as a lawyer,. . .

\* \* \*

L. "Related Claims" means all "Claims" arising out of a single "Wrongful Act" or series of "Related Wrongful Acts" in the performance of or failure to perform "Professional Services".

M. "Related Wrongful Acts" means all "Wrongful Acts" that have as a common nexus any fact, circumstance, situation, event, transaction cause or series of casually connected facts, circumstances, situations, events, transactions or causes.

N. "Retroactive Date" means the date specified in the Declarations.

* * *

P. "Wrongful Act" means any actual or alleged act, error, omission, "Personal Injury", neglect or breach of duty in the performing of or failure to perform "Professional Services".

4. SECTION III - EXCLUSIONS

This Policy does not apply to any "Claim" against the "Insured":

a. Based on or directly or indirectly arising from:

   (1) A "professional service" rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen that the "professional service" could give rise to a "claim";

   (2) Any common fact, circumstance, transaction advice or decision involved in a "professional service" reported as a claim or potential claim under any prior Policy; or

   (3) Any "claim", suit, act, error or omission disclosed in the application for this Policy.

* * *

k. Based on or directly or indirectly arising out of or resulting from any conspiracy, intentional breach of contract, intentional interference with rights or obligations, assault, battery, trespass or violations of the provisions of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961 *et seq.;*

l.  Based on or directly or indirectly arising out of or resulting from:

   (1) Any act committed with knowledge of its wrongful nature or with the intent to cause damage;

   (2) The gaining by the insured of any personal profit, gain or advantage to which the insured is not legally entitled;

   (3) Any criminal, fraudulent, or dishonest act. However, we shall defend such allegations against the insured if it involves a "claim" otherwise covered under the Policy until final adjudication; or

   (4) Judgments or awards arising from acts or omissions deemed uninsurable by law; . . .

   * * *

5. SECTION IV - LIMITS OF LIABILITY

   * * *

   2. All "Claims" alleging, based upon, arising out of or attributable to the same "Wrongful Act" and "Related Wrongful Acts" shall be deemed to be a single "Claim" regardless of whether made against one or more "Insured" and such "Claim" shall be deemed first made on the date the earliest of such "Claims" is first made even if such date is before the "Policy Period".

   * * *

   4. Two or more "Claims" or suits arising out of the same, related or continuous "Professional Services" shall be considered a single "Claim".

Based on the above provisions James River contends that it has no duty to defend or indemnify the Rinellas. It argues, first, that according to Terranova's Complaint the wrongful acts involving failure to effectuate the stock option transfer occurred in the years 1999 to 2001 and therefore were committed prior to the retroactive date of November 2, 2002 and any acts that were subsequent to the retroactive date were related acts that related back to the acts occurring prior to the retroactive date; second, the claim was first reported to Kemper, the issuer of a "prior policy", so as to be excluded under Section III a.(2); third, the Rinellas "knew or reasonably could have foreseen" that their acts could give rise to a claim and therefore were subject to the exclusion in Section III a.; and, fourth, the allegations that occurred after the retroactive date were acts that occurred after the retroactive date acts involved intentional conduct and were subject to the exclusion in Section III k. and l.(1), (2) and (3).

Kemper, the Rinellas, and Terranova argue in response that while some of the allegations of the Complaint would certainly be excluded from coverage, nevertheless, there are sufficient allegations remaining to require James River to undertake the defense. With regard to the relation back argument, they contend that the "related wrongful acts" language is not used in the insuring agreement but is used to determine limits of liability, thus the duty to defend is triggered by the fact that a claim was

made during the term of the policy.  The Rinellas further argue that the Kemper policy was not a "prior policy" within the terms of the exclusion in Section III a.(2).  Both policies were in effect at the time notice in the form of the lawsuit was given to both Kemper and James River.  The Rinellas also argue that the alleged intentional acts are just allegations which they deny and therefore could be covered acts.

It is the allegations of the Complaint, not the theory, which determines whether there is a duty to defend.  If the facts alleged are within or potentially within the coverage of the policy, the duty to defend is established and the threshold to satisfy a claim of potential coverage is low.  Even if the Complaint alleges several theories of recovery, the duty to defend arises even if only one such theory is within the potential coverage of the policy.  *U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 73 (1991).  With respect to James River's first contention it cites *Gregory v. Home Ins. Co.*, 876 F.2d 602, 604 (7th Cir., 1989) which interpreted a provision related to liability limits.  This case held that a provision concerning multiple claims arising out of a single act or series of related acts required treatment as a single claim with respect to the claim limit.  This case therefore did not involve a question of a duty to defend, but the limit of liability under the policy.  Here, James River has agreed in Section I 1.a.:

SECTION I - COVERAGES

1.  **Insuring Agreement**

    a.  We will pay on behalf of the "Insured" those sums in excess of the deductible the "Insured" becomes legally obligated to pay as "Damages" and "Claims Expenses" because of a "Claim" first made against the "Insured" and reported to us in writing during the "Policy Period" by reason of a "Wrongful Act" in the performance of or failure to perform "Professional Services" by the "Insured" or by any other person or entity for whom the "Insured" is legally liable. The "Wrongful Acts" must have been committed on or subsequent to the "Retroactive Date" specified in the Declarations and before the end of the "Policy Period".

the policy goes on to define "claim," "wrongful act," "related claim," "related wrongful acts," and "wrongful act." As stated above, James River contends that all of the wrongful acts alleged in the Terranova complaint relate back to the initial wrongful act which was the failure properly to obtain the timely transfer of the Comdisco stock options and therefore are excluded. However, the policy language does not support this interpretation. The "Insuring Agreement" (Section I l.a.) says that James River will pay for claims made during the term of the policy by reason of a "Wrongful Act" provided the wrongful act occurred on or subsequent to the retroactive date. Clearly the Complaint alleges that the Rinellas committed multiple wrongful acts. The failure properly to obtain transfer of the stock options being the first. Advising the filing of the petition for a rule to show cause a second. Taking

an appeal was a third.  Failure to notify Terranova of the wrongful acts was a fourth.  The coverup was a fifth.  While the first three acts occurred prior to the retroactive date, the fourth and fifth occurred subsequent to the retroactive date.  While these two acts are "related wrongful acts" in that they were committed in an attempt to extricate themselves from the consequences of their original wrongful acts, the insuring agreement does not limit the duty to defend by excluding related wrongful acts.  It will pay for claims made as a result of wrongful acts so long as they occurred on or after the retroactive date and during the policy period. The term "related wrongful acts" is applicable to establishing the limits of liability under Section IV 2. and 4.  *See Gregory v. Home Ins. Co.*, 876 F.2d at 604.

Also it may turn out that the original claim against the Rinellas is foreclosed by the statute of limitations.  Thus, the first wrongful act for which the Rinellas could be legally liable could well be the failure to alert her in time to file suit.  Thus, even interpreting the policy as James River does would still require the provision of defense as the failure to warn occurred after the retroactive date and during the term of the policy.

The Court agrees with the Rinellas that the Kemper policy was not a "prior policy" to make the exclusion in Section III a.(2) applicable.

Certainly the issue of whether James River must pay a judgment entered against the Rinellas is left to another day. But, as the cases make clear, the duty to defend is broader than the question of whether the insurer owes any money.

### III. **CONCLUSION**

For the reasons stated herein, the Court rules as follows:

1. The Motion for Summary Judgment of James River is denied;

2. The Motions for Summary Judgement of the Rinellas and Kemper Insurance are granted.

3. The Court declares that James River has a duty to defend Rinella & Rinella, Bernard B. Rinella, and Maricarol Lacy in the lawsuit filed in the Circuit Court of Cook County, Illinois, entitled "Lisa M. Terranova, plaintiff, versus Rinella & Rinella, Ltd., Bernard B. Rinella, and Maricarol Lacy, No. 05 L 004352.

**IT IS SO ORDERED.**

                                                    Harry D. Leinenweber, Judge
                                                    United States District Court

DATE: September 10, 2008